**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMES W. FORSYTHE,                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )                    3:10-cv-716-RCJ-VPC
                                  )
                                  )                    **ORDER**
JOSEPH BROWN, et al.,             )
                                  )
            Defendants.           )
                                  )
_____   )

        This case mainly involves a breach of contract claim relating to a study testing the

efficacy of an experimental drug used to fight cancer.  Three motions are pending before this

Court, including (1) Plaintiff's Motion for Partial Summary Judgment (#53) on Defendants'

counterclaims, (2) Plaintiff's Motion to File Confidential Documents (#54), and (3) Defendants'

Motion to File Exhibits Under Seal (#60).

**BACKGROUND**

**I.      Facts**[1]

        Plaintiff James Forsythe, M.D., is a medical oncologist and homeopathic physician

_____

        [1] The facts are recited per the nonmoving party's listing and are taken as true and

viewed in the light most favorable to the nonmoving party for the purposes of the counter-

defendant's motion for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."); *Bagadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996)

(noting the court must view the evidence in the light most favorable to the nonmoving party).

1    licensed in the State of Nevada.  (Compl. (#1-1) at 1).  Forsythe owns and operates the

2    Century Wellness Clinic in Reno, Nevada, which offers integrative oncology practices to those

3    with cancer.  (*Id.* at 2).  Defendant Joseph Brown became acquainted with Forsythe in the late

4    1970's or early 1980's.  (Opp'n to Mot. for Partial Summ. J. (#59) at 3).  Brown searched for

5    a compound that would be effective for cancer patients and identified the Salicinium molecule.

6    (*Id.* at 3).  Brown discussed Salicinium with Forsythe and in 2005 Forsythe agreed to study the

7    efficacy of Salicinium in the treatment of his late-stage cancer patients and report the results

8    (particularly the survival rate) to Brown.  (*Id.* at 4).  In exchange, Brown would provide the

9    Salicinium and the protocol for preparing the IV drip which distributed the drug free of charge.

10   (*Id.*).  Although Perfect Balance, Inc.—a corporation managed by Defendant Suzannah

11   Roberts, daughter of Defendant Joseph Brown—was ultimately the party that paid for and

12   supplied the product, Brown and later Defendant Cognate 3, LLC held the rights to the product

13   and allowed it to be distributed to Forsythe.  Apparently, the agreement between the parties

14   was informal and never reduced to writing.

15           Brown began discussions in late 2007 with HST Global, Inc. ("HST") concerning HST

16   purchasing the rights to Salicinium and the parties entered into a memorandum of

17   understanding in December of 2007.  (Opp'n to Mot. for Partial Summ. J. (#59) at 7).  In early

18   2008, Brown formed Defendant Cognate 3, LLC ("Cognate") as a limited liability company

19   under the laws of the State of Washington and Brown assigned his rights to Salicinium

20   (including his patent application with the USPTO) to Cognate.  (*Id.*).  The three members of

21   Cognate are Brown's three adult children (including Defendant Suzannah Roberts).  (*Id.*).

22   Cognate then entered into a letter of extension with HST to acquire the rights to Salicinium in

23   July 2008.  (*Id.*).  Forsythe became a director of HST by July 2008, and acknowledged that

24   HST held the rights to the results of the Salicinium study he was conducting by letter dated

25   July 9, 2008.  (*Id.* at 8).  The relationship between Cognate and HST was terminated on

26   September 22, 2008.  (*Id.*).  Throughout this time, Cognate continued to provide Salicinium

27   to Forsythe free of charge and continued to receive reports from Forsythe.  (*See id.*).

28           When the study began Forsythe had only 50 patients that participated in the study.

1  (Mot. For Partial Summ. J. (#54-2) at 4).  By 2010, the total number of patients who had

2  participated in the study was over 500.  (*Id.*).  Although at the commencement of the study

3  there was neither an agreement regarding the number of patients nor duration of the study,

4  both parties agree that either party had the right to discontinue their participation in the study

5  at any time.  (Opp'n to Mot. for Partial Summ. J. (#59) at 4).  Through January 2010,

6  Forsythe's data showed a survival rate of over 70% for the 414 patients who received

7  Salicinium alone.  (*Id.* at 9).

8      Brown was apparently quite happy with the results of the Salicinium study and hired an

9  attorney, Christine Humphrey, in 2008 to apply to the FDA for an IND number for Salicinium.

10  (Mot. for Partial Summ. J. (#54-2) at 5).  Humphrey discussed the requirements for an IND

11  application with Forsythe, who agreed to provide her with the requested information.  (Opp'n

12  to Mot. for Partial Summ. J. (#59) at 9).  Brown contends that at the time the study

13  commenced Forsythe had agreed to provide whatever documentation necessary from his

14  study to obtain an IND number from the FDA.  (*Id.* at 4).  Forsythe however claims his

15  business had been raided by the FDA in early 2005 and therefore he would never have agreed

16  to provide documents to the FDA at that time.  (Mot. for Partial Summ. J. (#54-2) at 5).

17  Forsythe failed to provide the requested information to Humphrey when she followed up with

18  him later in 2009 and early 2010.  (Opp'n to Mot. for Partial Summ. J. (#59) at 9).

19      Although Cognate had terminated its relationship with HST in 2008, Forsythe continued

20  discussing various transactions with HST, such as HST franchising Forsythe's clinics or

21  opening a second clinic in Las Vegas owned by HST and operated by Forsythe.  (Opp'n to

22  Mot. for Partial Summ. J. (#59) at  10).  In 2009, Suzanne Somers' book *Knockout* was

23  published which included an interview with Forsythe and prominently featured Salicinium.  (*Id.*

24  at 10).  HST and Forsyth both sought to capitalize on the publicity generated by the book.

25  (*Id.*).  HST issued a press release on December 10, 2009 announcing a partnership with

26  Forsythe, who had been featured in the book.  (*Id.*).  Forsythe saw a substantial increase in

27  new patient requests and referrals, so much so his revenues climbed from $103,000 before

28  the book was published to over $700,000 in March of 2010.  (*Id.* at 10, 21).  Brown objected

3

to Forsythe's entering into agreements involving the use of Salicinium and had Cognate's attorney send a letter to Forsythe questioning his involvement with HST.  (*Id.* at 11).

In early September, 2010, Forsythe presented a calculation at a convention suggesting patients who received only Salicinium had a survival rate of just 9% and that this was within the range of a placebo response rate.  (*Id.* at 12-13).  Forsythe came to this number by dividing the number of survivors who used only Salicinium by the total number of survivors in the study.  However, when previously representing the survival rates of patients receiving Salicinium, Forsythe had divided the number of surviving patients receiving only Salicinium by the total number who received only Salicinium.  (*Id.* at 11-12).  Had he used the method previously utilized, the survival rate would have been 40%, which far exceeds the placebo response rate.  (*Id.* at 13).

A dispute also arose between Forsythe and Cognate over the use of the terms "Forsythe Immune Therapy" and "FIT" (the "Subject Marks"), which were used interchangeably during the study.  (*Id.* at 6).  Forsythe  seems to assert the Subject Marks refer to his approach to treating late stage cancer patients which included a mixture of vitamins, minerals and Salicinium, while Cognate contends the Subject Marks referred to the use of IV Salicinium.  (*Id.*).  On June 1, 2010 Cognate filed an application with the USPTO to register the Subject Marks for use in connection with medical services.  (Am. Answer (#13) at 19).  Cognate claims it did so with the consent of Forsythe.  (*Id.*).  Forsythe however filed a complaint on September 28, 2010 in federal court in the Central District of California against Cognate and others claiming trademark infringement from their use of the Subject Marks.  (*Id.* at 20).  The case before then Central District of California has since been transferred and consolidated into the present case.

Forsythe decided to end the study of Salicinium around September 2010.  (Opp'n to Mot. for Partial Summ. J. (#59) at 13).  Cognate now contends Forsythe never provided the protocols, redacted patient records and other data for verification of summaries of the results of the Salicinium study that are necessary for Cognate to obtain an IND number from the FDA for Salicinium.  (Am. Answer (#13) at 16).

4

1

## II.    Procedural History

2

3       Forsythe filed this complaint in the Second Judicial District Court in Washoe County,

4 Nevada on September 28, 2010 against Cognate, Brown, and Roberts (collectively

5 "Defendants") and Defendants removed the matter to this Court on November 16, 2010.

6 (Compl. (#1-1)).  Forsythe alleges four causes of action in the Complaint, including: (1)

7 slander, defamation, and libel per se based on allegations by Defendants that Forsythe

8 falsified the results of the study; (2) extortion by Defendants by threatening criminal

9 prosecution and publication of defamatory statements if Forsythe failed to deliver the study

10 results and relinquish his intellectual property rights to the Subject Marks; (3) intentional

11 interference of present contractual relationships with his patients and others by demanding he

12 discontinue his use of Salicinium; and (4) intentional interference of prospective contractual

13 relationships by demanding Forsythe discontinue the use of Salicinium.  (*Id.* at 5-9).  Forsythe

14 seeks from this Court damages in excess of $100,000, lost earnings, attorney's fees, and

punitive damages.  (*Id.* at 9).

15       Defendant Cognate responded in its answer by filing four counterclaims against

16 Forsythe.  (Am. Answer (#13) at 14-20).  The causes of action include: (1) breach of contract

17 for failing to provide the Salicinium study results; (2) breach of the covenant of good faith and

18 fair dealing; (3) unjust enrichment by receiving Salicinium from Cognate free of charge,

19 allegedly worth millions of dollars; and (4) declaratory relief regarding the ownership of the

20 Subject Marks.  (*Id.*).  Cognate seeks damages, an award in the amount Forsythe was unjustly

21 enriched, a declaration of the rights of the Subject Marks, and that Forsythe receive nothing

22 on his complaint.  (*Id.* at 20).

23       In February 2011, Plaintiff and Defendants entered into a stipulation agreement (the

24 "Stipulation Order").  (Stipulation Order (#41)).  Section 12.3 of the agreement provides:

25         Without written permission from a Designating Party or a Court order secured
          after appropriate notice to all interested persons, a Party may not file in the
26        public record in this action any Protected Material.  No party or non-party shall
          file or submit for filing as part of the court record any documents under seal
27        without first obtaining leave of court.  Notwithstanding any agreement among
          the parties, the party seeking to file a paper under seal bears the burden of
28        overcoming the presumption in favor of public access to papers.

5

1   (*Id.* at 16).  "Protected Material" is defined as any disclosure or discovery material that is

2   designated as "Confidential", "Highly Confidential", "Trade Secret" or "PHI" (Protective Health

3   Information).  (*Id.* at 4).

4          On April 21, 2011, Forsythe filed a motion for partial summary judgment on Cognate's

5   counterclaims.  (Mot. for Partial Summ. J. (#54-2)).  Forsythe argues Cognate's first cause of

6   action for breach of contract fails because there was never any contract entered into between

7   the parties, the statute of fraud bars the claim, personal service contracts are not assignable

8   absent consent and thus Brown could not have assigned any contract to Cognate, and that

9   specific performance cannot be ordered because the terms of the agreement were too

10   uncertain and because specific performance is not allowed for personal service contracts.  (*Id.*

11   at 8-14).  Forsythe alleges the second cause of action for breach of the covenant of good faith

12   and fair dealing similarly fails because there was no contract in existence.  (*Id.* at 14-15).

13   Forsythe alleges the third cause of action fails because the Salicinium was given in

14   consideration for Forsythe's conducting the study, and because it is illegal under Nevada law

15   for a party that is not a physician to receive income from a physician derived from the practice

16   of medicine.  (*Id.* at 15-16).  Finally, Forsythe alleges the claim for declaratory relief fails,

17   contending this Court lacks jurisdiction because no actual controversy exists.  (*Id.* at 16-19).

18          The parties have also filed motions for orders to file confidential exhibits and to seal

19   certain Protected Material pursuant to the Stipulation Order.  Forsythe has filed a motion to

20   file confidential documents, which include an unredacted copy of the motion for partial

21   summary judgment, certain pages from Brown's deposition ("Exhibit Two"), and certain pages

22   of Suzannah Roberts' deposition ("Exhibit Nine").  (Mot. to File Confidential Doc. (#54) at 1;

23   Mot. for Summ. J. (54-2); Exhibit Two (#54-3); Exhibit Nine (#54-4)).  Cognate has filed a

24   motion to file exhibits under seal to protect certain portions of the depositions of Brown and

25   Roberts, along with relevant letters and contracts.  (Mot. to File Ex. Under Seal (#60)).

26

27

28

**DISCUSSION**

**I.     Motion for Summary Judgement**

     **A.     Legal Standard**

The purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A court must grant summary judgement when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

When presented with a motion for summary judgment, the court employs a burden-shifting analysis. When the moving party would bear the burden of proof at trial, it must present evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). In such circumstances, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* In contrast, when the nonmoving party would bear the burden of proving the claim or defense, the moving party may satisfy its burden in two ways: (1) by presenting evidence which negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party has failed to make a showing sufficient to establish an essential element to that party's case on which that party would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment and need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial burden, the burden will then shift to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To show a genuine issue of material fact, the opposing party is not required to establish a material issue of fact conclusively in its favor.

1  Rather, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to

2  resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. elec.*

3  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat. Bank of Ariz. v. Cities*

4  *Serv. Co.*, 391 U.S. 253, 289 (1968)). In essence, the nonmoving party cannot avoid summary

5  judgment by solely relying on conclusory allegations that are unsupported by factual data. *See*

6  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The opposition must go beyond the

7  allegations and assertions of the pleadings and set forth specific facts by providing the court

8  with competent evidence that establishes a genuine issue for trial. FED. R. CIV. P. 56(e);

9  *Celotex Corp.*, 477 U.S. at 324.

10  At the summary judgment stage, the court is not to weigh the evidence and determine

11  the truth, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477

12  U.S. at 249. The evidence of the nonmovant must be believed, and all justifiable inferences

13  drawn in his favor. *Id.* at 255. If the evidence of the nonmoving party is simply colorable or

14  it is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

15  **B.     Analysis**

16  **1.     Breach of Contract**

17  Forsythe first contends that Cognate's breach of contract claim is barred by the statute

18  of frauds. (Mot. for Partial Summ. J. (#54-2) at 8-9). Forsythe argues that the contract was

19  over a year in duration and not in writing, and thus void under the statute of frauds. *Id.* NRS

20  § 111.220(1) states that "[e]very agreement that, by the terms, is not to be performed within

21  1 year from the making thereof" is void unless "the agreement, or some note or memorandum

22  thereof expressing the consideration, is in writing, and subscribed by the person charged

23  therewith." NEV. REV. STAT. § 111.220(1). If the terms of the agreement do not indicate it

24  cannot be performed within one year of its making, then it is not precluded by the statute of

25  frauds. *Id.*; *Atwell v. Sw. Sec.*, 107 Nev. 823, 820 P.2d 766, 769 (1991). For this reason,

26  contracts that are "at will" are generally not within the statute of frauds. *Ctr. of Hope Christian*

27  *Fellowship, Local, Church of God in Christ v. Wells Fargo Bank Nevada, N.A.*, No. 3:11-cv-

28  173-RCJ-VPC, 2011 WL 939235, at *5 (D. Nev. Mar. 15, 2011). The terms of the agreement

8

here do not seem to indicate that the study could not have been completed within a one year period because the duration and number of patients were left open. (Opp'n to Mot. for Partial Summ. J. (#59) at 4). Both parties also agree that the duration of the study was "at will" and either party could terminate at any time, which is evidenced by the fact Forsythe terminated the study in September of 2010. (*Id.* at 13). The contract thus does not fall within the statute of frauds.

Furthermore, even if the agreement did originally fall within the statute of frauds, it would have been taken out by Defendants' full performance. The full performance by one party may remove a contract from the statute of frauds. *Edwards Indus., Inc. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1032, 923 P.2d 569, 573-74 (1996) (citing 2 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 457 (1950)). The agreement required Forsythe to administer the drug and record the results for the study, and in return, Brown and later Cognate provided Forsythe with the drug free of charge. Both Brown and Cognate seem to have fully performed on their part of the agreement, and consequently the agreement would be taken out of the statute of frauds.

Forsythe also argues the breach of contract claim fails because the agreement was continually modified—by steadily increasing the number of patients in the study—and Forsythe received no consideration for this modification. (Mot. for Partial Summ. J. (#54-2) at 10-11). For a new agreement or modification to be enforceable, there must be additional consideration. *Zhang v. Eighth Judicial Dist. Court*, 103 P.3d 20, 24 (2004). But here both sides did provide additional consideration: Forsythe included the additional patients in the study, and Cognate supplied the increased amounts of Salicinium free of charge. Because the arrangement here was "at will", neither party was obligated to continue. (Opp'n to Partial Summ. J. (#59) at 4). But by sending the additional Salicinium, Cognate was agreeing to the modification that the number of patients would be increased. Similarly, by accepting the Salicinium free of charge Forsythe was also agreeing to the modification and that these new patients would be included in the study. Consideration was therefore given by both parties for any modifications to the agreement.

9

Forsythe further asserts that the breach of contract claim fails because Cognate has no standing to sue because Brown could not assign the contract to Cognate. (Mot. for Partial Summ. J. (#54-2) at 9-10). Specifically, Forsythe argues that personal services contracts are not assignable absent consent, and therefore any assignment of the contract by Brown to Cognate would have been void because Brown failed to obtain consent from Forsythe. *Id.* According to Forsythe, because Cognate has no interest in the contract as the contract was not assignable, Cognate lacks standing to sue. *Id.* While personal services contracts generally require consent of the parties to be assigned, courts may permit the assignment if the character of the performance and obligation will not be changed by the assignment. *See, e.g. Reynolds & Reynolds Co. v. Tart*, 955 F.Supp. 547, 558 (W.D.N.C. 1997); 6A CORPUS JURIS SECUNDUM, ASSIGNMENTS § 39 (2011). Here the nature of the obligations were not changed on either side. Forsythe continued the study and Cognate continued to provide the drug. In addition, once an assignment is made, accepting the benefits from the assignee may constitute consent to the assignment. *See, e.g., In re Jack Hudson, Inc.*, 6 B.R. 153, 156 (Bankr. Nev. 1980). Forsythe accepted the Salicinium from the assignee (Cognate) and thus consented to the assignment.

Finally, Forsythe contends Cognate cannot obtain specific performance for breach of contract because specific performance is not available to enforce an agreement for personal services and because the agreement was indefinite. (Mot. for Partial Summ. J. (#54-2) at 11-13). Specific performance is available when: (1) there is a valid contract; (2) the terms of the contract are definite and certain; (3) the remedy at law is inadequate;(4) the party seeking performance has tendered performance; and (5) the court is willing to grant it. *Carcione v. Clark*, 96 Nev. 808, 618 P.2d 346, 348 (1980).

As stated above, there was likely a valid contract. Although the terms of a contract may be uncertain or incomplete, specific performance may still be granted if the uncertainty or incompleteness relates to matters that can be made certain or complete by "presumption, rule, or custom and usage." 81A CORPUS JURIS SECUNDUM, SPECIFIC PERFORMANCE § 28 (2011). The Ninth Circuit has stated that the course of performance of the parties is highly probative

1  of the parties understanding of the agreement.  *Nanakuli Paving & Rock Co. v. Shell Oil Co.,*

2  *Inc.*, 664 F.2d 772, 785 (1981).  In cases such as this where one party has fully performed,

3  it may be appropriate to look at the course of performance to interpret the agreement, so as

4  to avoid unfairness.  *See United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting*

5  *Indus. of U.S. & Canada, Local Union 525, Las Vegas, Nev. v. Stine*, 76 Nev. 189, 351 P.2d

6  965, 977 (1960) (noting specific performance is an equitable remedy).  This is especially true

7  where, as here, the party seeking specific performance is not requesting the other party to

8  perform a service, but only to deliver records regarding a past service (the study).

9  Furthermore, Forsythe has previously stated he is aware of what documentation is required

10 to obtain an IND number from the FDA and there seems to be a clear understanding between

11 the parties as to which patients files are requested, which helps clarify the terms of any

12 agreement between the parties.  (Opp'n to Mot. for Partial Summ. J. (#59) at 17-18).

13     The third element is also satisfied as the study results took years to obtain and may be

14 considered unique, rendering a legal remedy inadequate.  (*See id.*).  Cognate has also

15 apparently tendered performance by providing Forsythe with Salicinium free of charge for

16 many years, satisfying the fourth element.

17     For the above reasons, Forsythe has failed to meet his burden and summary judgment

18 is accordingly denied on Cognate's first cause of action for breach of contract.

19                    **2.     Breach of the Covenant of Good Faith and Fair Dealing**

20     Forsythe next argues Cognate's claim that the covenant of good faith and fair

21 dealing—which is implied in every contract under Nevada law—is meritless because no

22 contract existed between the parties. (Mot. for Partial Summ. J. (#59) at 14-15). As discussed

23 above, it is likely a valid contract existed and therefore Forsythe's argument fails.  Because

24 Forsythe again has failed to satisfy his burden, summary judgment is improper on this count.

25                    **3.     Unjust Enrichment**

26     Forsythe also contends that Cognate's unjust enrichment claim fails because the

27 Salicinium was given in consideration for Forsythe conducting the study and because under

28 Nevada law, a party who is not a physician cannot receive income a physician obtained

11

through the practice of medicine.  (Mot. for Partial Summ. J. (#59) at 15-16).  "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Nevada Indus. Dev. v. Benedetti*, 103 Nev. 360, 741 P.2d 802, 804 n.2 (1987).  The essential elements of unjust enrichment "are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof."  *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 626 P.2d 1272, 1273 (1981).

First, Forsythe seems to argue that Cognate cannot recover because there was an agreement in place under which Forsythe performed the study and Cognate provided the Salicinium free of charge.  (Mot. for Partial Summ. J. (#59) at 15-16).  In essence, Forsythe is arguing there was a contract, despite his denial that such a contract existed when responding to Cognate's breach of contract claim.  This argument fails because if the drug was given in exchange for Forsythe's performance, he failed to perform by not disclosing to Cognate the results of the study.  Thus he gave no benefit to Cognate in return and the elements of unjust enrichment would be satisfied.

Forsythe's second argument that it is illegal for a physician to share medical fees with non-physicians also fails for a number of reasons.  First, Forsythe fails to cite any legal authority for the position that it is illegal for revenues obtained through the practice of medicine be shared with non-physicians.  Second, even if it was law, Cognate is not seeking to share fees obtained through the practice of medicine, but to be compensated for the benefit unjustly bestowed upon Forsythe.  This Court clearly has the authority to order a creditor to be repaid, despite the fact the revenue was obtained through the practice of medicine.

Finally, Forsythe argues that Cognate has no standing to sue because it was Perfect Balance, Inc. that paid for and supplied the Salicinium to Forsythe, not Cognate.  (Mot. for Partial Summ. J. (#54-2) at 15).  Essentially, Forsythe contends that because Cognate provided no benefit to Forsythe, Cognate cannot recover from him for unjust enrichment.

Although Cognate did not pay for and supply the Salicinium, it still owned the rights to the drug and allowed it to be distributed to Forsythe in exchange for the study results.  While this may ultimately decrease the amount of damages Cognate may be awarded under this claim, it does not change the fact that Cognate has standing.

For these reasons, Forsythe has failed to satisfy his burden to obtain summary judgment on Cognate's claim of unjust enrichment.

### 4.    Declaratory Relief

Forsythe's final argument is that Cognate's claim for declaratory relief is meritless, asserting that this Court lacks jurisdiction over the matter because no actual controversy exists.  (Mot. for Partial Summ. J. (#54-2) at 16-19).  Forsythe argues that there is no case or controversy because Cognate cannot establish ownership of the mark "Forsythe Immune Therapy" as it is merely a surname, and because Cognate has not yet used the Subject Marks in commerce.  (*Id.* at 18).

The Federal Declaratory Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  This explicitly incorporates the Constitutional mandate of Article III that federal courts may exercise jurisdiction only over an actual case or controversy.  *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).  In determining whether an actual controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. P. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Forsythe is incorrect that Cognate cannot establish ownership of the Subject Marks. It is true that under the Latham Act, the PTO may deny registration of a Trademark if the mark is "primarily merely a surname."  15 U.S.C § 1052 (e)(4).  But the fact that a surname is utilized in one of the Subject Marks is not fatal to Cognate's claim.  In *In Re Hutchinson Technology*

*Inc.*, the Federal Circuit addressed whether the PTO's rejection of the mark "Hutchinson Technology" for being primarily merely a surname was proper. 852 F.2d 552, 553 (1988). The Court found that although the word "Hutchinson" alone may not be registrable, when combined with the work "Technology" it is a registrable trademark. *Id.* at 554-55. The same reasoning applies here. Although "Forsythe" on its own may not be registrable, when combined with the word "Immune Therapy" it may be. The fact a portion of one of the Subject Marks is a surname does not mean Cognate cannot establish ownership of the mark.

Forsythe is also incorrect in asserting Cognate has not used the Subject Marks in commerce. Cognate asserts that the Subject Marks have been used on their website to refer to Salicinium and that the Subject Marks were used continuously through the study to refer to Salicinium. (Opp'n to Mot. for Partial Summ. J. (#59) at 6). Furthermore, on the same day Forsythe filed this action in state court, he brought another action in federal court in the Central District of California claiming Cognate infringed upon his use of the Subject Marks. (Am. Answer (#13) at 20). If Forsythe believes a sufficient case in controversy exists in the trademark infringement case, then they must certainly concede that there is a case in controversy here where Cognate seeks declaratory relief on essentially the same issue. Furthermore, declaratory judgment actions involving intellectual property rights are generally allowed to be brought by potential infringers seeking a declaration of noninfringement or invalidity. *See AARP v. 200 Kelsey Assocs., LLC*, 2009 WL 47499, at *4 (2009). This is precisely the case here, as Forsythe has asserted that Cognate is infringing on the Subject Marks and Cognate seeks a declaratory judgment that it has not infringed.

For the above reasons, Forsythe has failed to satisfy his burden for summary judgment as to the claim for declaratory relief. Because Forsythe has failed to satisfy his burden as to any of the above claims, Forsythe's Motion for Partial Summary Judgement (#53) is denied.

**II.     Motions Regarding Protected Information**

**A.     Legal Standard**

Federal Rule of Civil Procedure 5.2 allows for the filing of documents and exhibits under seal. A party seeking to seal a judicial record bears the burden of overcoming the presumption

14

in favor of access to judicial records and must show that "compelling reasons" support secrecy. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). This presumption further applies to documents attached to dispositive motions. *Id.* However, access to judicial records is not absolute. *Id.* at 1178. Records that have "traditionally been kept secret for important policy reasons" are not subject to the traditional right of public access. *Id.* Included among the class of records that may be filed under seal are records that could be used to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Id.* at 1179. Additionally, the public has less of a need for access to documents which are "unrelated, or only tangentially related to the underlying cause of action." *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

**B.  Analysis**

**1.  Forsythe's Motion to File Confidential Documents**

Forsythe has additionally filed a motion to file confidential documents with the Court. (Mot. to File Confidential Doc. (#54)). Specifically, he seeks to file an unredacted copy of his motion for partial summary judgment, and two exhibits which are selected pages from the depositions of Defendants Joseph Brown and Suzannah Roberts which are cited to in the motion. (*Id.* at 1). Because these documents contain protected material, pursuant to section 12.3 of the Stipulation Order, the filing party must obtain written permission of the Designating Party or a court order before such information can be publically filed. (*See* Stipulation Order (#41) at 16).

First, Forsythe seeks permission to file an unredacted copy of his motion for partial summary judgment. (Mot. to File Confidential Doc. (#54) at 1). The information presented in the unredacted copy that is labeled by Cognate as either "trade secret" or "highly confidential" generally relates to the specifics of the study. The designated information merely states: Forsythe distributed the Salicinium for free, the study began with 50 patients but later increased to at least 100, it was a survival based study, and that Brown intended that Forsythe gather data necessary for Brown to obtain an IND number from the FDA. As there is no

15

compelling reason this information should be sealed from the public, the Court will permit Forsythe to file an unredacted copy of his motion for partial summary judgment.

In this same motion, Forsythe also moves to have Exhibit Two (#54-3) and Exhibit Nine (#54-4) filed publically with his motion for partial summary judgment. (Mot. to File Confidential Doc. (#54) at 1). These exhibits are simply selections from the depositions of Brown (Exhibit Two) and Roberts (Exhibit Nine) from which Forsythe obtained the information filed in his unredacted motion for partial summary judgment. With the exception of deposition pages 8 and 11 of Exhibit Nine, these exhibits only contain pages of the deposition from which information was actually used in the motion for partial summary judgment and for which no compelling reason exists to keep the information from the public. For the same reasons the unredacted copy of the motion is allowed, Forsythe is permitted to file the majority of these Exhibits.

There is however a compelling reasons to prevent deposition pages 8 and 11 of Exhibit Nine from being disclosed. Deposition page 8 of Exhibit Nine contains information on shareholders of Perfect Balance, Inc. (who is not a party to this case). This information is irrelevant to the resolution of this case and it is not necessary to disclose this information as Forsythe never cites this page in his motion for partial summary judgment. Furthermore, Cognate has also specifically sought to have this information sealed as being highly confidential because it contains confidential shareholder information. (Mot. to File Confidential Doc. (#60) at 4). Deposition page 11 of Exhibit Nine in contrast does contain information utilized in the motion for partial summary judgment, but the first six lines of the page have been designated highly confidential because it lists Roberts' investments in other companies. There is no compelling reason to keep other than the first six lines of page 11 of Exhibit Nine from the public. Therefore, Forsythe is allowed to file Exhibit Two (#54-3), and also may file Exhibit Nine (#54-4) except for page 8 and the first six lines of page 11.

Finally, in the same motion, Forsythe argues he should be awarded $475 in attorneys fees pursuant to 28 U.S.C. § 1927 for being required to bring this motion. (Mot. to File

Confidential Doc. (#54) at 5).  Under 28 U.S.C. § 1927, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay the expenses incurred due to such conduct.  Forsythe's counsel asserts she attempted to contact Cognate's counsel on April 19th and 20th of 2011 to obtain a waiver to file the protected information but her inquiries were not responded to before filing Forsythe's motion to file confidential documents on April 21, 2011.  Forsythe's counsel seems to be claiming this delay falls under the unreasonable and vexation standard of 28 U.S.C. § 1927.  This argument fails for two reasons.  First, Forsythe here agreed to the Stipulation Order which required written permission of the Designating Party or a court order to file information designated as protected.  Being required to abide by the Stipulation Order the parties agreed to in no way seems unreasonable.  Second, a two day delay hardly seems to be unreasonable and vexatious.

For the above reasons, Forsythe's Motion to File Confidential Documents (#54) is granted in part and denied in part.  Forsythe is permitted to file: (a) an unredacted copy of his motion for partial summary judgment; (b) Exhibit Two; and (c) Exhibit Nine, except for page 8 and the first six lines of page 11.  However, Forsythe's request in the same motion for attorney's fees is denied.

### 2.    Cognate's Motion to File Exhibits Under Seal

Cognate has filed a motion to file certain exhibits under seal.  (Mot. to File Ex. Under Seal (#60)). These exhibits discuss matters such as: compounds that break down Salicinium, suppliers, how the compound is applied, some negative results from Salicinium studies, information on the identity of stockholders of Perfect Balance, Inc. (who is not a party to this case), sales information, and information on other studies.  There are compelling reasons this information should be sealed.  Disclosing such information could be harmful to Cognate and such information has generally been found by courts to be the type which may be kept secret for important policy reasons.  *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (noting the disclosure of trade secrets and information only tangentially

related to the cause of action as sufficient justifications to seal court records).

Cognate also seeks to have two non-disclosure agreements and their agreements with HST be sealed as well.  (Mot. to File Ex. Under Seal (#60) at 5).  Forsythe has not opposed Cognate's motion to seal these documents.  There are obviously compelling reasons for a non-disclosure agreement to be sealed.  The agreements with HST is also collateral to this matter and reveals information regarding business negotiations.  Therefore there are compelling reasons for these documents to be sealed.

Accordingly, Cognate's Motion to File Exhibits Under Seal (#60) is granted.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that Forsythe's Motion for Partial Summary Judgment (#53) is denied.

IT IS FURTHER ORDERED THAT Forsythe's Motion to File Confidential Documents (#54), such as the unredacted copy of the motion for partial summary judgement and Exhibits Two and Nine is granted, so long as page 8 and the first six lines of page 11 are removed from Exhibit Nine.

It IS FURTHER ORDERED THAT Cognate's Motion to File Exhibits Under Seal (#60) is granted.

DATED: This 27th day of October, 2011.

_____
United States District Judge