1

2

3

4

5    **UNITED STATES DISTRICT COURT**

6    **DISTRICT OF NEVADA**

7

8    JAMES W. FORSYTHE, et al.,              )    3:10-CV-0716-RCJ (VPC)
                                             )    consolidated with
9                   Plaintiff,               )    3:10-CV-0804-RCJ (VPC)
                                             )
10         vs.                               )    **REPORT AND RECOMMENDATION**
                                             )    **OF U.S. MAGISTRATE JUDGE**
11   JOSEPH BROWN, et al.,                   )
                                             )
12                  Defendant(s).            )
     _____)
13                                           )
     AND RELATED CLAIMS                       )
14   _____)

15         This Report and Recommendation is made to the Honorable Robert C. Jones, United States

16   District Judge pursuant to 28 U.S.C.  §§ 636(b)(1)(A) and (B), 636(e)(6)(iii), and the Local Rules of

17   Practice IB 1-4.  Before the court are two matters, both of which concern ongoing discovery disputes in

18   this action.  Defendants Joseph Brown, Cognate 3, LLC, Suzannah Robert, and Perfect Balance, Inc.,

19   and counterclaimant/third-party plaintiff Cognate 3, LLC ("Cognate parties') filed a motion for sanctions

20   pursuant to Rule 37(b) for plaintiffs' failure to obey this court's order of July 27, 2011 (#93). Plaintiffs

21   opposed (#101) and the Cognate parties replied (#105).

22         Also before the court is the contempt proceeding against Deane Albright ("Mr. Albright"), the

23   certified public accountant whom plaintiffs retained as their expert witness to testify about plaintiffs'

24   damages.  The Cognate parties filed a motion for order to show cause why Mr. Albright should not be

25   held in contempt of court for failure to obey subpoenas (#94).  Plaintiffs opposed (#101), the Cognate

26   parties replied (#105), and the court granted the Cognate parties' motion (#110).  The court issued an

27   order to show cause and set a hearing for December 6, 2011 (#112).  Mr. Albright, through plaintiffs'

28   counsel, filed a notice of lodgement (#102) and a memorandum in response to the order to show cause

(#119).  D. Greg Durbin, counsel for the Cognate parties ("Mr. Durbin"), filed an affidavit in support of the order to show cause (#121), and the court held an evidentiary show cause hearing on December 6, 2011 (#124).  The court granted Mr. Durbin leave to file a supplemental brief concerning the issue of proper service of subpoenas (#123).  The court now enters this order.

I.    **Introduction**

These two consolidated cases center around a study conducted in Reno, Nevada on adult stage IV cancer patients testing the efficacy of an experimental drug called Salicinium.[1]  The plaintiffs in the Case No.  3:10-CV-0804-RCJ (VPC) action (the "804 case"),  filed their complaint on September 28, 2010, in the United States District Court for the Central District of California.  The plaintiffs are James W. Forsythe, M.D., an individual, Century Wellness Clinic, and James W. Forsythe, M.D., H.M.D. a Nevada Professional Corporation.  In the 804 case, plaintiffs allege claims for federal trademark infringement, federal trademark fraud, federal false designation of origin, federal trademark dilution, and five state law claims. Plaintiffs seek damages for irreparable harm and injury, lost profits, loss of goodwill, and other damages in excess of thirty million dollars (804 case #1).  Plaintiffs sued Joseph Brown, Cognate 3 LLC, Perfect Balance Metabolic Research, and Cancer Hope Center.

On that same date, plaintiff James Forsythe ("plaintiff") filed a complaint in the Washoe Country District Court against defendants Cognate 3 LLC, Joseph Brown, and Suzannah Roberts, and defendants removed the matter to this court on November 16, 2010 (716 case #1-1).  Plaintiff alleges four claims relief: (1) slander, defamation, and libel per se based on allegations by defendants that plaintiff falsified the results of the study; (2) extortion by defendants threatening criminal prosecution and publication of defamatory statements if plaintiffs failed to deliver the study results and relinquish his intellectual property rights to the subject marks; (3) intentional interference with prospective contractual relationships with his patients and others by demanding he discontinue his use of Salicinium; and (4) intentional interference of prospective contractual relationships by demanding plaintiff discontinue the use of Salicinium. *Id.*  The plaintiffs and counter-defendants are collectively referred to as the "Forsythe parties."

---

[1]The District Court ordered consolidation of the cases pursuant to the parties' stipulation (#28).

The Cognate parties answered and counterclaimed, raising four claims for relief: (1) breach of contract for failing to provide the Salicinium study results; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment by receiving Salicinium from Cognate free of charge, which is allegedly worth millions of dollars; and (4) declaratory relief regarding the ownership of the subject marks (#13).

Given the complexity of the claims in this case, the court scheduled monthly case management conferences with the parties so that discovery disputes could be resolved quickly and efficiently and to enable the parties to complete discovery in a timely, cost effective manner.  Since the parties' unsuccessful early settlement conference in March 2011, the court has held case management conferences beginning in June 2011 through November 2011.  The court initially set a discovery deadline of June 21, 2011 (#29), granted an extension until August 22, 2011 (#47), and then set the following final discovery deadlines:

> (1) Fact discovery deadline  – November 30, 2011;
> (2) Expert reports due – December 16, 2011;
> (3) Rebuttal expert reports due – January 20, 2012; and
> (4) Expert discovery deposition deadline – February 20, 2012

(#83).  This order concerns the Cognate parties' efforts to obtain discovery about the Forsythe parties' damage claims, as well as documents for Cognate 3 regarding its counterclaims from the Forsythe parties and/or from their accountant, Mr. Albright.

## II.   **Procedural History**

### A.   **Request for Production of Documents to Forsythe parties**

On February 7, 2011, the Cognate parties sent a request for production of documents to the Forsythe parties, and Request Nos. 68 and 69 asked for all documents in support of plaintiffs' claims of lost profits and loss of goodwill or other damages (#67, Exs. F & G). The Forsythe parties responded in their original and supplemental responses that their accountant, Mr. Albright, was in possession of the documents, and he would submit an expert report (#67, Ex. J & Ex. L).  Earlene Forsythe, Dr. Forsythe's wife, confirmed that Mr. Albright had been the Forsythes' accountant for at least twenty years (#67, Ex. O).  After several attempts to meet and confer, the Cognate parties filed a motion to compel

1  production of these and other discovery responses in June 2011, three months after the responses were

2  due.

3        On July 27, 2011, the court granted the Cognate parties' motion to compel and ordered the

4  Forsythe parties to produce responsive documents no later than Wednesday [sic],[2] September 26, 2011,

5  two months from the date of the hearing and six months after the initial responses were due (#83).  The

6  Forsythe parties did not comply with the court's order, and the Cognate parties' counsel, Mr. Durbin

7  sent the Forsythe parties' counsel, Marie Mirch ("Ms. Mirch") an email to request compliance with the

8  court's order (#93, Ex. C). As of October 6, 2011, Ms. Mirch provided nothing, and this motion for

9  sanctions followed.

10       The Forsythe parties' opposition to the motion for sanctions, filed October 13, 2011, is telling:

> [Dr. Forsythe] does not have the documents relating to damages, as the
> financial information for both of his business (and person) are in the
> custody and control of his CPPA, [sic] Deane Albright. In responding to
> these requests, Dr. Forsythe properly identified that he did not have the
> document [sic] and directed defendants here to get them. However, in
> doing so, Dr. Forsythe referred to the financial statements, tax returns and
> Schedule C's for his business. He did not waive the account-client [sic]
> privilege that exists under Nevada Revised Statutes.

(#101, p. 2).

### B.    The Three Subpoenas Duces Tecum to Mr. Albright

#### 1.    June 17 Subpoena for Tax Returns,
#### Financial Statements, and Communications

19       The Cognate parties' failed in their February 2011 attempt to obtain financial documents from

20  the Forsythe parties through standard requests for production of documents, because they insisted that

21  Mr. Albright had all of the financial information; therefore, the Cognate parties served a subpoena on

22  Mr. Albright and his firm on April 27, 2011 (#64, Ex. A).  The subpoena sought the following categories

23  of documents through the period 2004-2010:

> 1. Financial statements for Dr. Forsythe, Century Wellness Clinic,
>    or Cancer Treatment Center;
> 2. Tax returns for these parties;
> 3. Documents between Mr. Albright's firm and HST Global, Inc,
>    concerning the above-named parties;

---

[2]The court minutes incorrectly reflect September 26, 2011 as a Wednesday; in fact, it was a Monday (#83).

4

4. Documents between Mr. Albright's firm and Ron Howell, Eric Clemons, or Wes Tate concerning the above-named parties; and

5. Any documents between Mr. Albright's firm and the parties identified in category #1.

*Id.*   The term "documents" was defined in pertinent part "to include, but not limited to, reports, correspondence, notes, diaries, logs, directives and work papers, emails, videos, brochures, books, articles, [and] marketing materials, . . ." *Id.*   This initial definition of "documents" played an important role in the disputes, which are the subject of this order.

Mr. Albright received the subpoena at the end of April 2011, and he emailed his clients, James and Earlene Forsythe, with a copy to Marie and Kevin Mirch, to ask how to respond (#64, Ex. A & #124, Ex. B).[3]   Of course, by this time the Forsythe parties and Ms. Mirch were well aware that the documents sought through the subpoena were the same documents they had been asked to produce months earlier in February. Upon service of this subpoena, Danette Hessler ("Ms. Hessler"), an accountant employed by Mr. Albright's firm, initiated the following email exchange among Mr. Albright, Earlene Forsythe ("Ms. Forsythe"), plaintiff's wife, with copies to Ms. Mirch and Mr. Mirch:

May 17, 2011 - Ms. Hessler to Mr. Albright:
[Mr. Albright], I have attached a copy of the subpoena we received regarding Dr. Forsythe.  Please review and let me know what documents we are actually providing. Especially, if I need to get the 2010 tax returns completed by the deadline of 5/26/11.

May 18, 2011 - Mr. Albright to Ms. Forsythe::
This is what I received.  Any urgency?

May 18, 2011 - Earlene Forsythe to Mr. Albright:
No we do not need the 2010 tax returns by that date. No urgency.

May 18, 2011 - Mr. Albright to Ms. Forsythe (copies to Marie Mirch and Kevin Mirch):
Need to ask Marie [Mirch] and Kevin [Mirch]. *I don't think it would be good for you to give any financials. "Banner year" in 2010; I could give them a copy of extension for 1040.*

May 19, 2011 - Dr. Forsythe to Mr. Albright: (Copy to Ms. Mirch):
We are not going to court, case was settled, Forsythe vs. Wright. For now you are right Deane. *We should not be giving out any financials for 2010.*

---

[3]Ms. Mirch is plaintiffs' counsel in this proceeding; however Ms. Mirch advised at the show cause hearing that she was specially appearing on behalf of Mr. Albright.  See Transcript of December 6, 2011 order to show cause hearing at ("OSC hearing Tr.") at 7:16-19.  Pursuant to Fed.R.Evid. 201, the court takes judicial notice that Kevin Mirch was disbarred from the practice of law in Nevada on April 10, 2008.

1

> We will do the extension if needed in the Brown case.  Thanks Deane for
> being on top of it.

2

3

> May 19, 2011 - Mr. Albright to Dr. Forsythe (copy to Ms. Mirch):
> Good job!! Justice was obviously served. Deane

4   (OSC Hearing, Ex. 3) (emphasis supplied). Mr. Albright later testified that by characterizing 2010 as a

5   "banner year," he meant that Century Wellness Center had enjoyed a great year financially and had made

6   higher profits that ever before.  OSC hearing Tr. at 103:3-11.

7     Mr. Albright did not object to the April subpoena; instead, Ms. Mirch moved to quash the

8   subpoena on the ground that she had not received formal notice pursuant to Fed.R.Civ.P. 45(b)(1), (#64,

9   Ex. A; Affidavit of Ms. Mirch).   The Cognate parties re-served the subpoena and provided proper notice

10   of the subpoena on June 17, 2011, which is why the first subpoena is referred to as the "June 17

11   subpoena" in this order (#70, Ex. A & B).  Plaintiffs' motion to quash the original subpoena was deemed

12   to apply to the June 17 subpoena.[4]

13     At the July 14, 2011 case management hearing (#80), this court denied plaintiffs' motion to

14   quash and ordered as follows:

15       a. Financial statements 2004 - 2010 for James Forsythe, MD,
       Century Wellness Clinic, or Cancer Screening & Treatment
16         Center of Nevada shall be produced.

17       b. Tax returns from 2004 - 2010 for James Forsythe, MD, Century
       Wellness Clinic, or Cancer Screening & Treatment Center of
18         Nevada shall be produced.

19         With respect to the financial statements and tax returns, the Court
       clarifies that the subpoena does not seek information of Dr.
20         Forsythe or his wife in their personal capacities.  The subpoenas
       seek information under Dr. Forsythe's dba as a sole
21         proprietorship.

22       c. Mr. Albright shall produce any documents in his possession
       concerning HST Global, Inc. between 2004 - 2010 pertaining to
23         James Forsythe, MD, Century Wellness Clinic, or Cancer
       Screening & Treatment Center of Nevada.  If Mr. Albright does
24         not have these documents or they are no longer in his possession,
       he shall so state in his response to this request.

25

26       d. As to documents between Mr. Albright and Ron Howell, Eric
       Clemons or Wes Tate pertaining to James Forsythe, MD, Century

27

28     [4]Upon receipt of the June 17 subpoena, Mr. Albright emailed the Forsythes and told them, "I am
forwarding this to Kevin [Mirch] and Marie [Mirch] to see how I should respond (#124, Ex. B).

Wellness Clinic, or Cancer Screening & Treatment Center of Nevada, Ms. Mirch advises these documents do not exist; therefore, Mr. Albright shall so state in his response to this request.

e.    Documents between Mr. Albright and James Forsythe, MD, Century Wellness Clinic, or Cancer Screening & Treatment Center or Nevada for 2004 - 2010 shall be produced.

The court ordered that the documents be produced by July 22, 2011. *Id.* On this same date, Ms. Mirch emailed Mr. Albright and directed him to comply with the June 17 subpoena by July 22, 2011 (#124, Ex. C). Mr. Albright received Ms. Mirch's email and understood the direction to produce the documents by July 22, 2011. OSC hearing Tr. at 65:1-25; 66:1-4. Mr. Albright knew that he was ordered to produce emails from his firm to Mr. Howell and/or HST Global, Dr. Forsythe, Century Wellness or Century Screening Centers – all for the period 2004 - 2010. OSC hearing Tr. at 66:5-25; 67:1-8. However, Ms. Forsythe instructed Mr. Albright not to respond to the order because the items were confidential and privileged; therefore, he did not do so. OSC hearing Tr. at 68:16-25; 69:1-9.[5]

In response to the court's order, Mr. Albright and his firm produced 172 pages of documents through plaintiffs' counsel; however, on July 28, 2011, Mr. Durbin, counsel for the Cognate parties ("Mr. Durbin") wrote Mr. Albright a detailed letter – with a copy to plaintiffs' counsel – to explain the deficiencies in the production and to request compliance (#124, Ex. E). Mr. Albright had failed to produce certain tax returns, financial statements, and documents ordered by the court, and he only produced two emails between Mr. Albright and HST. *Id.* Mr. Albright never responded to the letter. OSC hearing Tr. at 72:4-17.

## 2.    August 2, 2011 Subpoena for Working Papers and Files

The August 2, 2011, subpoena was a second attempt to obtain the documents not produced in response to the June 17 subpoena, specifically, working papers and all documents deemed communications between Mr. Albright and his clients, Dr. Forsythe and Century Wellness Clinic (#124, Ex. G). Mr. Albright understood the scope of the August 2 subpoena, but did not object to the subpoena on or before the return date. OSC hearing Tr. at 77:2-21.

---

[5]On July 20, 2011, Mr. Albright sent another email to both Kevin and Marie Mirch: "Kevin and Marie: This is everything requested in the subpoena. Please let me know if you need anything else." (#124, Ex. D).

At the September 12, 2011, case management conference (#88), the court considered Mr. Albright's failure to respond to the July 28, 2011, letter and the August 2 subpoena and stated:

> The Court notes Ms. Mirch does not represent Mr. Albright.  The Court further notes Mr. Durbin represents in defendants' case management report that there are deficiencies with Mr. Albright's production as it concerns the first subpoena and that Mr. Albright has failed to respond to the second subpoena.  The Court expresses its concern regarding the importance for Mr. Albright to respond to these subpoenas so the parties can complete their discovery.  If Mr. Albright does not respond to the subpoenas, Mr. Durbin will be left to file a motion to compel and request sanctions.  The Court advised Mr. Durbin he shall have leave to send Mr. Albright a copy of this order.

On September 13, 2011, Mr. Durbin sent Mr. Albright a letter advising that he had failed to fully comply with the June 17 subpoena, and that he totally failed to comply with the August 2 subpoena (OSC hearing, Ex. H).  Mr. Durbin set a deadline for compliance for both subpoenas for Friday, September 16, 2011, and he warned Mr. Albright that failure to comply would draw a motion for contempt of court for failure to obey the subpoenas.  *Id.*  He also warned Mr. Albright that he would seek attorney's fees and costs in obtaining compliance of the subpoenas.  *Id.*  On September 14, 2011, Mr. Durbin sent a follow-up letter to Mr. Albright and enclosed a copy of this court's September 12, 2011 minute order (OSC hearing, Ex. I).

Mr. Albright did not comply with the subpoenas, and he did not respond to the letters.  Although Mr. Albright he received the September 13 and 14, 2011, letters and the court's minute order, he did nothing in response at Ms. Forsythe's direction and because "everything would go through Marie Mirch." OSC hearing Tr. at 78:3-13.  Mr. Albright conceded that there was nothing in the court's September 12, 2011, order to indicate that the pendency of a motion to quash excused Mr. Albright from responding to the subpoenas, and that other than conversations with Ms. Mirch or Ms. Forsythe that a motion to quash was forthcoming, he had no other information, apart the court's order.  OSC hearing Tr. at 80:9-25;81:1-24.  Mr. Albright admitted that the court's order stated that if he failed to respond to the subpoenas, a motion would follow with a request for sanctions.  OSC hearing Tr. at 82:8-19.  Mr. Albright did not comply with the court's order because Ms. Mirch told him that Ms. Forsythe was adamant that he not do so.  OSC hearing Tr. at 80:8-25; 81:1-25: 82:1-25; 83:1-4.

### 3.      September 20, 2011 Subpoena

In a final effort to avoid contempt proceedings, the Cognate defendants served a third  subpoena on the custodian of records for Mr. Albright's firm, which included the items covered in the June 17 and August 2 subpoenas with a return date of September 30, 2011 ("September 20 subpoena") (OSC hearing, Ex. J).  Mr. Albright did not produce documents responsive to the subpoena, and he made no appearance at the time, date, and location set out in the subpoena.  OSC hearing Tr. at 77:10-21.

### 4.      September 29, 2011 Motion to Quash

On September 29, 2011, plaintiffs filed a motion to quash the September 20 subpoena and supplement concerning the earlier June 17 and August 2 subpoenas (#s 90 & 91).  Plaintiffs asserted the accountant-client privilege as a basis for Mr. Albright's refusal to comply.  *Id.*  On October 12, 2011, Mr. Albright also asserted the accountant-client privilege in response to the August 2 subpoena and attested that he had already produced all documents responsive to the June 17 subpoena.  (#102).  The Cognate defendants responded to plaintiffs' motion to quash and also filed their motion to hold Mr. Albright and his firm in contempt of court (#s 92 & 94.)

### 5.      October 18, 2011 Hearing

The court denied plaintiffs' motion and supplemental motion to quash subpoenas (#s 90 & 91) and ordered that categories of documents responsive to the June 17 and September 20 subpoenas be produced, and that all documents responsive to the August 2 subpoena be made available for copying by October 20, 2011 (#110).  The court ordered Dr. Forsythe to produce Schedule C to his personal tax return to the extent it relates to his sole proprietorship.  *Id.*  The court also granted the Cognate parties' request for monetary sanctions against the Forsythe parties because it found the motion quash was brought without justification and for the purpose of delay.  *Id*.

The court granted the Cognate defendants' motion for order to show cause why Mr. Albright should not be held in contempt court and set the matter for hearing on December 6, 2011.  *Id.*  As of October 6, 2011, the date the Cognate defendants filed their motion for contempt, this was the status of the document production:

           *a.*     *The June 17 and September 20 Subpoenas*

1.     Financial statements and tax returns 2004 - 2010 for Dr. Forsythe, Century Wellness Clinic, or Cancer Screening & Treatment Center of Nevada – Plaintiffs' initial production on July 21, supplemented September 21, and finally supplemented on October 3.  Production completed.

2.     Documents between Mr. Albright's firm and HST Global, Inc. for 2004-2010 pertaining to the above-named parties: two emails.

3.     Documents between Mr. Albright's firm and Ron Howell, Eric Clemens or Wes Tate regarding the above-named parties: None.

4.     Documents for 2004 - 2010 between Mr. Albright's firm and the above-named parties: None.

(#94, Affidavit of Mr. Durbin).  Therefore, as to categories 1, 2, and 3, Mr Albright completely failed to respond to the June 17 and September 20 subpoenas, this court's July 14, 2011 order (#80), as well as the Cognate parties' informal efforts to obtain the documents through their July 28, September 13, and September 14 letters.  *Id.*

           *b.*     *The August 2 and September 20 Subpoenas*

These two subpoenas sought working papers in support of tax returns and financial statements for the years 2004 - 2010 for Century Wellness Clinic, James W. Forsythe, and James W. Forsythe, a sole proprietorship, as well as documents or electronic communications between Mr. Albright's firm and these parties. *Id.*  Other than the financial statements and tax returns earlier produced, Mr. Albright produced nothing more.  *Id.*

        **6.**     **Mr. Albright's November 9, 2011 Deposition**

           *a.*     *Emails*

Counsel for the Cognate defendants took Mr. Albright's deposition on November 9, 2011 (#121, Durbin affidavit).  Mr. Albright testified that he did not get "real serious" about searching his Outlook email system at his firm until after September 30, 2011 (#121, Ex. B (partial excerpt of Albright deposition)).  As of the date of his deposition, Mr. Albright had produced sixteen emails between his firm & HST/Mr. Howell, as well as three internal emails between his firm and the Forsythes relating to HST (#121).

1    As of the date of Mr. Albright's deposition, he had produced no emails concerning

2 communications between him and his firm and plaintiffs (other than a few relating to HST and the

3 subpoenas), even though the subpoenas called for production of all emails.  At his deposition, Mr.

4 Albright agreed to do a new search and put on a CD the email traffic between Mr. Albright's firm and

5 the Forsythes or their businesses (#121, Ex. B).  On November 15, 2011, Mr. Albright produced  what

6 he described as "relevant Forsythe emails" (#121, Ex. A).  After discussions between Mr. Albright and

7 defendants' counsel about the scope and meaning of "relevant Forsythe emails," Mr. Albright produced

8 eighty-eight additional pages of emails based upon an expanded definition of what is "relevant" (#121).

9 However, this latest response was limited to emails Mr. Albright sent, received, or deleted in his

10 mailbox, and it does not account for the email traffic between his firm and the plaintiffs for the period

11 2004 through 2010.  OSC hearing Tr. at 90:21-25; 91:1-21; 92:16-25; 93:1-25; 94:22-25; 95:1-7.  Mr.

12 Albright testified that Ms. Hessler has been the accountant mainly responsible for the financials and tax

13 returns for the plaintiffs for the past twelve years and is the person who has maintained significant

14 contact with the Forsythes, yet no email traffic between Ms. Hessler and the plaintiffs had been

15 produced.  OSC hearing Tr. at 95:10-25; 96:1-2; 98:11-19.

16                                    *b.    Mr. Albright's Engagement Letter with Plaintiffs*

17    Although the very first subpoena served on Mr. Albright asked for production of documents,

18 including any correspondence, it was not until Mr. Albright's deposition that he testified concerning the

19 indemnity provision in his firm's engagement letter with the plaintiffs.  Mr. Albright testified that his

20 engagement letters include a provision that in the event a client directs him not to disclose information

21 in response to subpoenas or summonses, the client will indemnify him for attorney's fees and costs

22 (#124, Ex.1).  At the show cause hearing, Mr. Albright first testified that he did not produce the

23 engagement letter at Ms. Forsythe's direction.  OSC hearing Tr. at 69:7-11. He then explained that he

24 did not consider an engagement letter "correspondence," despite the fact that it is on his firm's

25 letterhead, was addressed to the plaintiffs, and he mailed it to his clients. He thought of engagement

26 letters as work paper files.  OSC Hearing Tr. at 69:12-25; 70:1-25.

27

28

1    **III.    Fed.R.Civ.P. 37(b) and Fed.R.Civ.P. 45**

2        **A.    Fed.R.Civ.P. 37(b)**

3        Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides for sanctions for a party's

4    failure to comply with a discovery order, and sanctions may include the following:

5                    (i)      directing that the matters embraced in the order or other
                            designated facts be taken as established for the purpose of the
6                            action, as the prevailing party claims;
                    (ii)     prohibiting the disobedient party from supporting or opposing
7                            designated claims or defenses, or from introducing designated
                            matters into evidence;
8                    (iii)    striking pleadings in whole or in part;
                    (iv)     staying further proceedings until the order is obeyed;
9                    (v)      dismissing the action or proceeding in whole or in part;
                    (vi)     rendering a default judgment against the disobedient party; or
10                   (vii)    treating as contempt of court the failure to obey any order except
                            an order to submit to a physical or mental examination.
11

12   The court is not limited to imposing the sanctions enumerated Rule 37(b)(2)(A) and may make any order

13   that is "just." *Valley Engineers, Inc. v. Electric Engineering Co.,* 158 F.3d 1051, 1056 (9th Cir. 1998)

14   (justice is the central factor in a sanctions order under Rule 37(b)).  Instead of or in addition to the

15   potential sanctions listed above, "the court must order the disobedient party, the attorney advising that

16   party, or both to pay the reasonable expenses, including attorney's fees, cause by the failure [to obey the

17   court's order], unless the failure was substantially justified or other circumstances make an award of

18   expenses unjust." Fed.R.Civ.P. 37(b)(2)(C). In deciding whether to grant sanctions, the court may

19   "properly consider all of a party's discovery misconduct . . ., including conduct which has been the

20   subject of earlier sanctions." *Payne v. Exxon Corp.,* 121 F.3d 503, 508 (9th Cir. 1997).

21        The Cognate parties request the following sanctions: (1) a finding that the plaintiffs suffered no

22   damages or irreparable injury in this action; (2) an order that the Forsythe plaintiffs are precluded from

23   presenting any evidence of loss of goodwill, loss of profits, other damages, or irreparable injury at the

24   trial in this case; (3) a finding that the Forsythe plaintiffs entered into an agreement or understanding

25   with HST Global to provide the results of the Salicinium study to HST Global and, in turn, were used

26   by HST Global in filings with the Securities and Exchange Commission; and (4) an award of attorney's

27   fees and costs to the Cognate parties for bringing the motion for sanctions (#93).

28

1    Although the requested sanctions would not result in dismissal of the Forsythe parties' action,

2  they come close to it.  The Ninth Circuit adopted a five-part test, with three subparts to the fifth part, to

3  decide whether a case-terminating sanction is proper:

> 1)  the public's interest in expeditious resolution of litigation;
> 2)  the court's need to manage its docket;
> 3)  the risk of prejudice to the party seeking sanctions;
> 4)  the public policy favoring disposition of cases on their merits; and
> 5)  the availability of less drastic sanctions.
>
> The subparts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.

9  *Connecticut General Life Insurance v. New Images of Beverly Hills,* 482. F.3d 1091, 1096 (9th Cir.

10  2007) (citing *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003) (citations omitted).  The test is

11  not mechanical, but provides the court with a way to consider what to do, and it is "not a set of

12  conditions precedent for sanctions or a script that the district court must follow." *Connecticut General,*

13  482 F.3d at 1096 (citing *Valley Eng'rs v. Electrical Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir. 1998).  In

14  deciding whether to impose case-terminating sanctions, the most critical factors are not simply delay or

15  docketing management concerns, but truth and whether "a party's discovery violations make it

16  impossible for a court to be confident that the parties will ever have access to the true facts." *Id.* at 1097

17  (citing *Valley Eng'rs. v, Electric Eng'g. Co.,*158 F.3d 1051, 1057-58 (9th Cir. 1998)).  Where sanctions

18  result in default or dismissal, "the sanctioned party's violations must be due to the 'willfulness, bad

19  faith, or fault' of the party." *Jorgensen v. Cassiday,* 320 F.3d at 912 (quoting *Hyde & Drath v. Baker,*

20  24 F.3d 1162, 1167 (9th Cir. 1994)).

21    **B.    Fed.R.Civ.P. 45**

22    Rule 45 of the Federal Rules of Civil Procedure governs subpoenas duces tecum for the

23  production of documents with or without the taking of a deposition and allows parties to a lawsuit to

24  compel a non-party to produce documents. Once a nonparty is served with a subpoena, the obligation

25  to respond cannot be delegated to an attorney, especially where the subpoenaed party has control over

26  the documents requested in the subpoena. *Corrales v. Castillo,* 2008 WL 4186233, 1 (D. Nev. 2008).

27  If the non-party objects to the subpoena, he or she can object, and once this occurs, the subpoena

28  recipient is not obligated to comply with the subpoena.  Fed.R.Civ.P. 45(c)(2)(B)(i) & (ii).  The

13

objection must be served within fourteen days after service of the subpoena, or before the time designated in the subpoena, if sooner.  Failure to serve timely objections may constitute a waiver of objections to the subpoena, other than objections to service.  *McCoy v. Southwest Airlines Co., Inc.,* 211 F.R.D. 381, 385 (C.D. Cal. 2002) (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998).  If the parties are unable to resolve their dispute, the serving party may file a motion to compel.  In contrast, a party cannot object to a subpoena duces tecum served on a nonparty, but must instead file a motion to quash or seek a protective order.  Fed.R.Civ. P. 45(c)(3).  *See Moon v. SCP Pool Corp,* 232 F.R.D. 633, 636 (C.D.Cal. 2005).

Rules 45(d)(2)(A) requires a person withholding subpoenaed information under a claim of privilege to expressly make the claim and to provide a privilege log.  However, there is no federal accountant-client privilege.  *United States v. Arthur Young & Co.,* 465 U.S. 805, 817 (1984) citing *Couch v. United States,* 409 U.S. 322, 335 (1973).  *See also In re Grand Jury Proceedings Witness Bardier,* 486 F.Supp. 1203, 1211 (D. Nev. 1980).

Rule 45(e) provides that a court may "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  The initial question regarding contempt "has long been whether [contemnors] have performed 'all reasonable steps within their power to insure compliance' with the court's orders."  *Stone v. City of San Francisco,* 968 F.2d 850, 856 (9th Cir. 1992), cert. denied, 506 U.S. 1081 (1993) (quoting *Sekaquaptewa v. McDonald,* 544 F.2d 396, 404 (9th Cir. 1976), cert. denied, 430 U.S. 931 (1977).  The party moving for contempt has the burden to establish by clear and convincing evidence that the contemnor has violated a clear and specific court order.  *Bademyan v. Receivable Management Services Corp*., 2009 WL 605789 (C.D. Cal. 2009). *See also Woolfard Glassblowing Co. v. Vanbragt,* 118 F.3d 1320, 1322 (9th Cir. 1997).

Once the moving party shows by clear and convincing evidence that the contemnor has violated a clear and specific court order, the burden shifts to the contemnor to show that he or she took every reasonable step to comply and to explain why compliance was not possible.  *Bademyan,* 2009 WL at 605789, 2. *See Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983).  To assess the extent to which the contemnor has taken "every reasonable step" to comply with the court order, the court can consider

"(1) a history of noncompliance and (2) failure to comply despite the pendency of a contempt motion." *Bademyan,* 2009 WL at 605789, 2 (citations omitted).

### III.   Discussion and Analysis

The court considers the Cognate parties' motion for sanctions and the contempt proceeding together because the facts reveal how clearly one is tied to the other.  Mr. Albright did not make decisions about whether to comply with the subpoenas or court orders in a vacuum; he did so after consulting with Ms. Mirch and the Forsythe parties.  The Forsythe parties and Ms. Mirch, in turn, responded to discovery requests knowing that the Cognate parties were attempting to obtain the same financial documents from Mr. Albright that they had earlier refused to produce because Mr. Albright was the custodian of those records.  The evidence reveals a shell game by which the Forsythe parties and their counsel – with the cooperation of Mr. Albright – did their best to delay discovery and keep the Cognate parties in the dark about critical information related to the plaintiffs' damage claims.  It is in this context that the court now turns to each matter.

### A.   Mr. Albright's Contempt of Court

#### 1.   The Cognate defendants have established by clear and convincing evidence that Mr. Albright violated orders of this court and the subpoenas.

The court has outlined in detail the chronology of events in this case, and the court finds that the Cognate parties have met their burden to establish clear and convincing evidence that Mr. Albright ignored the requirements of three subpoenas and this court's order.

#### 2.   Whether Mr. Albright took reasonable steps to comply with the subpoenas and this court's order.

The court now considers whether Mr. Albright demonstrates that he took every reasonable step to comply with the subpoenas or that compliance was not possible. *Stone,* 968 F.2d at 856.  In making this determination, the court considers Mr. Albright's history of noncompliance and the extent to which he failed to comply during the pendency of the motion for contempt. *Bademyan*. 2009 WL at 605789, 2.

Mr. Albright testified there were four general reasons why he failed to comply with three subpoenas and the court's order: (1) he thought disputes concerning the scope of the subpoenas stayed

1   production;[6] (2) he thought he had given the Cognate parties all of the documents responsive to the

2   subpoenas;[7] (3) his staff made errors in collecting documents responsive to the subpoenas;[8] and (4) his

3   clients told him not to do so.  The fourth reason cuts to the heart of what occurred in this case.  Mr.

4   Albright followed his clients' orders and Ms. Mirch's advice, perhaps under the mistaken belief that the

5   indemnification provision of his firm's engagement letter would shield him from liability for failing and

6   refusing to comply with subpoenas and a court order.

7                                    *a.      The Accountant-Client Privilege*

8          Mr. Albright testified repeatedly at the show cause hearing that he ignored the three subpoenas,

9   Mr. Durbin, and this court's order at his clients' directions because the Forsythes felt many of the

10  requests invaded the accountant-client privilege.  OSC hearing Tr. at 9:23-25; 10-1-1; 38:9-21; 39:1-9;

11  40:1-5; 41:10-20; 46:14-20; 68:1-25; 69:1-9; 72:13-17; 75:23-25; 76:1-2; 78:8-13; 80:15-21; 81:3-11;

12  82:16-25; 83:1; 106:5-9.  In fact, the groundwork for noncompliance was set in mid-May, when Mr.

13  Albright and his clients had an email exchange *not* to produce 2010 financial information because

14  Century Wellness Center had enjoyed a "banner year" (OSC hearing Ex. 3).  From the outset, Ms.

15  Forsythe and/or Ms. Mirch made the decisions about what Mr. Albright should or should not produce.

16  Mr. Albright acquiesced and never once objected to three subpoenas served on his firm over a five-

17  month period.  As the recipient of the subpoenas, it was Mr. Albright's obligation to send Mr. Durbin

18  a letter – either himself or through *his* attorney – to interpose objections to the subpoenas.  Had Mr.

19  Albright retained his own attorney, he might well have been advised that the accountant-client privilege

20  does not apply in federal court, as all of the documents sought by the three subpoenas related to the

21  damages that plaintiffs claim under the Lanham Act, as well as to their request for injunctive relief based

22  upon irreparable harm (#1).

23

24  _____

25          [6]OSC hearing Tr. at 41:10-25; 42:1-4; 44:12-18; 46:2-20; 48:15-17; 64:21-25; 77:22-25; 78:1-13;
    80:15-25; 81:1-24; 82:1-24.

26          [7]OSC hearing Tr. at 30:3-12; 33:17-25; 34:1-11; 34:13-24; 39:17-25; 47:23-25; 48:1; 53:5-7;
    54:12-16; 59:2-10; 61:10-15.
27
            [8]OSC hearing Tr. at 13:1-9; 14:19-25; 20:1-9; 14:11-24; 19:7-25; 75:3-19; 97:13-25; 98:1-25;
28  99:1-10.

*b.      Mr. Albright did not reasonably comply with the subpoenas.*

Mr. Albright failed to demonstrate he took reasonable steps to comply with the subpoenas; in fact, his conduct suggests a concerted and deliberate effort to derail discovery to prevent the Cognate defendants from obtaining documents to which they are entitled.  Mr. Albright's conduct also reveals a history of noncompliance – even in the face of a court order and this court's express warning that he faced contempt if he failed to do as the court ordered.  Mr. Durbin went to extraordinary lengths to avoid a contempt proceeding by serving new subpoenas and writing to Mr. Albright several times to implore him to respond.  Mr. Albright gave Mr. Durbin no choice but to proceed, and as a result, unreasonably delayed discovery in this case.

What is even more disturbing is the even after the court ordered the show cause hearing, Mr. Albright continued to fail to produce documents that were clearly within the scope of the subpoenas. The most glaring example is his firm's emails.  At his deposition in November, Mr. Albright agreed to produce emails responsive to the subpoenas and then decided only to produce those he deemed "relevant."  After more disputes, Mr. Albright only produced his personal emails, notwithstanding that it was Ms. Hessler, not Mr. Albright, who had been the Forsythes' liaison for the firm for twelve years and would obviously have hundreds of emails on her computer.

Mr. Albright cannot shirk his obligations under the subpoenas and the court's order with the response that he was following his clients' order, or that he did not know the accountant-client privilege does not apply in federal court.  Nor does the indemnity provision of the engagement letter with his clients shield him from contempt. Mr. Albright had control of the documents and had a clear duty to produce documents in the possession of his firm.  While it is unfortunate that Mr. Albright relied on his clients' or Ms. Mirch's advice and did not retain his own attorney, it is he, not they, who is subject to the contempt motion, and he must bear the consequences.

**B.      Rule 37(b) discovery sanctions**

Early in February 2011, the Cognate parties propounded routine discovery requests on the Forsythe parties about their damage claims, and the Forsythe parties responded in March that their accountant, Mr. Albright, had all of the documents responsive to the requests (#67-3, Ex. J).  When Mr. Durbin received the responses, he called Ms. Mirch, she agreed to supplement the responses, and Mr.

1   Durbin followed this phone call with a detailed letter, which outlined the deficiencies in the responses

2   and his understanding of their agreement (#67).   When Ms. Mirch did not reply, he sent follow-up

3   emails to her on March 31, April 6, April 8, and April 11, 2001.  *Id.*  Ms. Mirch finally responded on

4   April 12, 2011, promising discovery responses "no later than early next week."  *Id.*  Mr. Durbin sent a

5   confirming email that the documents would be provided by April 19, 2011.  *Id.* On April 22, 2011, Ms.

6   Mirch finally provided supplemental responses, but Mr. Durbin deemed them inadequate, and the motion

7   to compel followed.  *Id.*

8         Mr. Durbin filed his motion to compel on June 14, 2011, four months after sending the initial

9   written discovery and at about the same time Ms. Mirch had also moved to quash the first  subpoena on

10   Mr. Albright for the very same documents that Ms. Mirch had conceded were in Mr. Albright's

11   possession.  In response to the motion to compel, filed in early July 2011, the Forsythe parties once again

12   simply report that Mr. Albright had all of the documents, but added that they had filed a motion to quash

13   the subpoena because it had not been properly served (#73).  On July 27, 2011, this court granted the

14   Cognate parties' motion to compel and set a deadline of September 26, 2011, to supplement all of the

15   outstanding discovery (#83).  The court expressly stated at that hearing that the Cognate parties were

16   entitled to these documents from both the Forsythe parties and Mr. Albright.  As Mr. Durbin noted, "The

17   need for Plaintiffs to be explicit and specific about their damage claims is particularly crucial in this case

18   since Plaintiffs were so vague about their damages in their initial disclosures" (#93, p. 5:4-6).[9]  No

19

20   _____

21         [9]       Pursuant to the Federal Rules of Civil Procedure 26(a)(1)(C), Plaintiff/Counter-
     Defendant, and Third Party Defendant provide the following with respect to the categories of damages
22   claimed herein, and without waiving, prejudicing or in any way limiting the matters to be covered by any
     experts timely designated by the Plaintiff/Counter-Defendant, and Third Party Defendant and the subject
     and content of the reports by any such experts.
23         1.  Damage to Dr. Forsythe's reputation - damages do not have to be proven for
     defamation per se.
24         2.  Lost profits - the amount to be determined by Plaintiffs' CPA Deane Albright.  Mr.
     Albright has not yet prepared an expert report detailing these damages.
25         3.  Emotional distress - exact amount not yet determined.
         4.  Cost of litigation.
26         5.  Attorneys' fees - exact amount to be determined at conclusion of case.
         6.  Non-monetary damages including inductive and declaratory relief and other such relief
27   as deemed by the court.

28

supplement had been provided to the initial disclosures as of the filing of the motion for sanctions (#93, p. 5:8).

On September 26, 2011, the Forsythe parties provided supplements to some discovery, but provided no supplemental responses to Request Nos. 68 and 69, which pertain to their damage claims (#93). This information was critical to the Cognate parties, in light of the November 30, 2011 discovery cutoff and the December 16, 2011 discovery cutoff for experts. *Id.*

On September 27, 2011, Mr. Durbin once again sent an email to Ms. Mirch to ask that she supplement the documents as ordered by the court, but she did not respond. Mr. Durbin had no choice but to file the motion for sanctions on October 6, 2011. *Id.*

At the October 18, 2011 hearing, the court denied Ms. Mirch's latest motion and supplemental motion to quash, ordered an outside vendor to pick up the documents from Mr. Albright's office October 20, 2011, for copying, ordered Dr. Forsythe to produce certain portions of his personal tax return, granted the motion to hold Mr. Albright in contempt, set a date for that hearing, ordered scanning of patient files, and awarded the Cognate parties their attorney's fees concerning briefing on the motion to quash (#110). The court awarded monetary sanctions against the Forsythe parties because the motion to quash was unjustified and delayed discovery. *Id.* The court decided to await the outcome of the contempt hearing before ruling on the motion for sanctions. *Id.*

As the court has discussed, the record in this case amply supports sanctions. Because the sanctions requested are severe, although not case-ending, the court considers the five-part test most recently outlined in *Connecticut General,* 482 F.3d 1091, 1096 (9th Cir. 2007).

**1.     The public's interest in expeditious resolution of litigation**

The documents the Cognate parties sought from the Forsythe parties and Mr. Albright are essential to an analysis of the damage claims, which the plaintiffs claim exceed thirty million dollars. Nearly one year ago, the Cognate parties first attempted to obtain these documents with limited success, notwithstanding court orders. It is also worth noting that time and time again, Mr. Durbin attempted to resolve these discovery disputes without resorting to the court. He repeatedly sent Ms. Mirch letters and emails, and he followed up with telephone calls. It was to no avail. It is clear that Ms. Mirch and the

Forsythe parties intended to delay and obstruct production of these documents as long as possible.  This factor weighs in favor of sanctions.

### 2.    The court's need to manage its docket

Severe sanctions are warranted when "a [party's] noncompliance has caused the action to come to a halt, thereby allowing the [party], rather than the court, to control the pace of the docket."  *Allen v. Bayer Corp. (In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.),* 460 F.3d 1217, 1234 (9th Cir.2006) (citations omitted).  The Forsythe parties filed an early motion for summary judgment in April 2011, and Ms. Mirch consistently urged the court to stay discovery until the District Court decided that motion.  When this court denied her request, the Forsythe parties' began a campaign to resist standard discovery and oversaw Mr. Albright's decision to ignore repeated subpoenas for necessary records.  As a result, the Forsythe parties clogged the court's docket and slowed discovery, despite the court's admonitions that discovery deadlines would not be extended yet again.  This factor weighs in favor of sanctions.

### 3.    The risk of prejudice to the party seeking sanctions

"Failing to produce documents as ordered is considered sufficient prejudice." *Allen,* 460 F.3d at 1227 (citations omitted).  Prejudice is presumed from an unreasonable delay, and the burden to show actual prejudice shifts to the party seeking the sanction only after the responding party has given a non-frivolous excuse for the delay. *Hernandez v. City of El Monte,* 138 F.3d 393, 400-1 (9th Cir. 1998).  Ms. Mirch and the Forsythe parties engaged in a months-long strategy to prevent production of documents to the Cognate parties**.** Since February 2011, the Cognate parties tried in vain to get the Forsythe parties to provide evidence to support their claims of loss of goodwill, lost profits, other damages, and irreparable injury.  Despite being ordered by the court to do so on July 27, 2011, the Forsythe parties continued to stall.  As a result, the Cognate parties have been effectively prevented from preparing their defense of the damage claims.  Ms. Mirch and the Forsythe parties have given no plausible, non-frivolous excuse for these delays.  Ms. Mirch and the Forsythe parties acted willfully and in bad faith, especially when their actions are considered along with their directions to Mr. Albright to ignore three subpoenas for the same documents. This factor weighs in favor of sanctions.

#### 4. The public policy favoring disposition of cases on their merits

Although the Cognate parties have not requested case-terminating sanctions, those requested are severe and would prevent the Forsythe parties' from proving up their damages. The sanctions would also result in a finding that the Forsythe parties and HST Global had an agreement by which Dr. Forsythe, as a member of HST's board of directors, provided information on the results of the Salicinium study to HST that were used in HST's filings with the Securities and Exchange Commission. These sanctions must be balanced against Ms. Mirch and the Forsythe parties' deliberate pattern of obstruction of discovery to prevent the Cognate parties from obtaining evidence on these critical issues. This factor weights slightly in favor of the Forsythe parties.

#### 5. The availability of less drastic sanctions

Factors that indicate whether a court has considered alternatives include: "(1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?" *Allen,* 460 F.3d at 1228-9, quoting *Malone v. U.S. Postal Service,* 833 F.2d 128, 132 (9th Cir. 1987). These factors provide a way for the court to think about what to do as opposed to a formula the court must follow. *Conn. Gen. Life, Ins. Co.,* 482 F.3d at 1096.

Over many months, the court issued orders, admonitions, and sanctions against Ms. Mirch, the Forsythe parties, and Mr. Albright - all to no avail. However, the court reiterates that it is not considering case-terminating sanctions in this case. Perhaps a more relevant question is whether the conduct of the Forsythe parties and Ms. Mirch make it unlikely that the truth will ever come out.[10] Here, Ms. Mirch and the Forsythe parties engaged in a concerted pattern of bad faith and discovery abuse designed to thwart every legitimate attempt the Cognate parties made to secure basic discovery about

---

[10]Another example of the court's lack of confidence that the truth will ever come out in this case concerns an assertion Ms. Mirch made for the first time at the December order to show cause hearing. Ms. Mirch told the court that there were no certificates of service "for the two subpoenas in the summer prior to September." OSC Tr. At 151:20-23; 152:1-10. The court granted Mr. Durbin leave to file a supplemental reply to contradict Ms. Mirch's statements. He did so, and the court finds that Ms. Mirch waived any claim that she did not receive timely notice of the subpoenas because she never made an objection on that basis, nor did she raise it as a ground for the original opposition (#123). Moreover, the statement is simply not true.

a pivotal issue in this case.  Ms. Mirch and the Forsythe parties consistently failed to respond to discovery requests, to Mr. Durbin's repeated efforts to meet and confer, and they disregarded this court's order.  At case management hearings and motions hearings, the court repeatedly warned Ms. Mirch that continued refusal to provide basic discovery would not be tolerated, yet she and the Forsythe parties ignored these warnings.  In addition to their own misconduct, Mr. Albright took his orders from Ms. Mirch and the Forsythe parties and this contributed enormously to the delays in this case and leaves the court to wonder whether the Cognate parties will ever have access to the true facts.  *Valley Eng'rs.,* 158 F.3d at 1058.  Based upon this record, the court has no confidence that Ms. Mirch and the Forsythe parties will ever provide the documents to which the Cognate parties are entitled.

The record before the court vividly illustrates Ms. Mirch and the Forsythe parties' bad faith and willful disregard of their discovery responsibilities, justifying severe sanctions against them.

## III.    **Conclusion and Recommendation**

Pursuant to U.S.C. § 636(e)(6)(B)(iii) upon the commission of an act of civil contempt, the magistrate judge shall:

> . . . forthwith certify the fact to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge to upon a day certain to show cause why that person should not be adjudged in contempt by reason or the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

The undersigned magistrate judge finds Deane Albright to be in civil contempt and hereby certifies that Mr. Albright has violated the June 17, August 2, and September 20 subpoenas, and this court's October 18, 2011 order (#110).

The parties should be aware of the following:

1.    They may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order, and any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

A.    Based upon the foregoing and for good cause appearing, IT IS RECOMMENDED that the District Court enter an order regarding Deane Albright as follows:

    1.    Finding Deane Albright in civil contempt of this court for violating the June 17, August 2, and September 20 subpoenas, and this court's October 18, 2011 order (#110);

    2.    Ordering Mr. Albright to pay the Cognate parties' reasonable expenses, including attorney's fees and costs, in making the motion to hold Mr. Albright in contempt (#94), the reply (#105), and preparing for and participating in the December 6, 2011 order to show cause hearing;

    3.    Ordering the Cognate parties to file an affidavit of attorney's fees and costs pursuant to Local Rule 54-16(b) and (c) within ten days from the District Court's order on this report and recommendation; and

    4.    Ordering Mr. Albright to pay the costs and attorney's fees himself, notwithstanding the indemnification provision of the engagement letter between Mr. Albright and the Forsythes and/or entities controlled by them.

B.    Based upon the foregoing and for good cause appearing, IT IS FURTHER RECOMMENDED that the District Court grant the Cognate parties' motion for sanctions (#93) and that it enter the following findings and orders:

    1.    A finding that plaintiffs, James Forsythe, an individual, Century Wellness Clinic, and James W. Forsythe, M.D., H.M.D. a Nevada professional corporation ("plaintiffs") suffered no damages or irreparable injury in this action;

    2.    An order that plaintiffs are precluded from presenting any evidence of loss of goodwill, loss of profits, other damages, or irreparable injury at the trial of this case;

    3.    A finding that plaintiffs entered into an agreement or understanding with HST Global, Inc. to provide the results of the Salicinium study to HST Global and

1    HST, in turn, used the findings in its filings with the Securities and Exchange

2    Commission; and

3    4.    An order that the Cognate parties are awarded their reasonable attorney's fees and

4    costs in bringing this motion and all briefing associated with it. Within ten days

5    of the District Court's order on this report and recommendation, the Cognate

6    parties shall  file an affidavit of attorney's fees and costs pursuant to Local Rule

7    54-16(b) and (c).  Ms. Mirch shall pay one-half of the attorney's fees and costs

8    awarded, and the Forsythe parties shall pay the other half.

9    C.    Based  upon  the  foregoing  and  for  good  cause  appearing,  IT  IS  FURTHER

10   RECOMMENDED that the District Court enter an order that Ms. Mirch pay the attorney's fees and costs

11   the Cognate parties incurred in filing their supplemental reply re order to show cause re contempt (#123).

12   Within ten days of the District Court's order on this report and recommendation, the Cognate parties

13   shall file and affidavit of attorney's fees and costs pursuant to Local Rule 54-16(b) and (c).

14   **IT IS SO ORDERED.**

15   DATED:   February 6, 2012.

16

17   _____

18   UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28